May it please the Court, John Berman, on behalf of Pellett-Taggart. The Discharge Injunction and the Fresh Start are the cornerstone of the Bankruptcy Code. Discharged debtors have no money, generally, and the intent of Congress was to give them a very clear protection from being sued or pursued in state court or otherwise on a claim that is, in fact, discharged. The bankruptcy appellate's decision in this case is unprecedented and unheralded and it completely undercuts the importance of the Discharge Injunction. When someone goes to state court, for instance, as in this case, on a claim which was, in fact, discharged, that violates the Discharge Injunction. And it does not matter whether the creditor has any basis for doing it or no basis for doing it or believes that they can do it or believes that they can't do it. It makes no difference, because the person — Well, are you suggesting that it's, like, strict liability? Yes, absolutely. Where does it — where do you get that notion in our case law? Your own decisions, two of them, and the Eleventh Circuit also. And here's the reason. Once you know — and this is your own quotes — once you know that there is an injunction, the burden shifts to the defendant to show that there was a reason why they could not obey the injunction. And the only defense that has ever been allowed — excuse me, let me restate that. Your case says, if there is a clear and specific order of the court, and you prove that, then the burden shifts to the defendant or the person charged with contempt to show why they could not obey the order. It's not a question of whether or not they know that the order has to be obeyed. It's that they can't. And the only defense that has ever been allowed by any court, including this Court, is if they did not know that there was, in fact, an injunction. And that's been the situation. That's not quite so. Have you read Zillog? Yes, I have. Well, in Zillog, the Court went — we went beyond that and said two questions. First, do they have actual knowledge of the order, and do they have actual knowledge that it applies? And what seemed to stay there was that if you have a good-faith belief — maybe unreasonable — but a good-faith belief that the order does not apply — and in this case, in Zillog, it was because they didn't have adequate notice — but in this case, it's whether your client had returned to the fray, an issue which went both ways, both in State and Bankruptcy Court. And so the Court said, under those circumstances, Hyde, which is your 11th Circuit case, doesn't apply. Isn't that — isn't that what Zillog says? I do not believe so, and let me tell you why. Zillog says a lot of different things, but it also said potentially applies. If you read all of the quotes, this Court actually said was not aware of its potential application to it, and that's an actual statement. And let — if I might, to explain why this is true and why — what we have is if you do it, we will litigate whether the discharge injunction applies or not. If it turns out you're wrong, then you must make the debtor whole. And we have the Renwick v. Bennett, which was before Zillog, in which the creditor claimed we have a — effectively a reaffirmation, and the Bankruptcy Court and this Court held — or at least this Court held — that it was not, in fact, a reaffirmation, and therefore it was a barred claim, and therefore the creditor was liable for sanctions. Now that was before Zillog. Now let's go after Zillog. In the Espinoza — in the Espinoza case, which is after Zillog, in that case, the creditor was — there was a Chapter 13. Chapter 13 plan determined that the claim was — the student loan claim was discharged, but the order itself accepted the student debt. There was actually an order that accepted the student debt. And so it came up to this Court, and this Court sent back to the Bankruptcy Court whether or not that was a clerical error that should be changed. It went back to the Bankruptcy Court, which determined it was a clerical error, and in fact the plan itself controlled over the statute that said you have to have an adversary proceeding. Now this is a situation where the creditor was actually — had an order that said that the student debt was accepted, and then the — that was changed. Then in addition, the creditor contended in the Bankruptcy Court that it was not proper to allow a student debt to be discharged by a plan. You must do it the other way, and there's actually statutory authority for that in other jurisdictions. This Court ruled the plan is the controlling document and sent it back for consideration of sanctions. In that situation, the creditor had two legitimate arguments as to why they didn't know that it applied to their debt. First you had an order that said it was accepted, and then you had an argument that the statute protected the creditor because you couldn't do it through a plan, you had to do it through an adversary proceeding. And in spite of that, this Court sent it back for sanctions, determination of sanctions. The Bankruptcy Appellate Panel's decision in this case is contrary to what's implicit in the — in Espinoza, in footnote number 7. And in addition, in that footnote, this Court said two things. One, it confirmed Renwick v. Bennett, and it said it agreed with it, and it also affirmed Hardy. It said, we agree with Hardy. This Court has said on three occasions, we agree with the Eleventh Circuit. Under the Eleventh Circuit ruling, the — it's very clear, and they said it expressly, subjective state of mind is irrelevant. And this Court in Espinoza, which was after Zilog, said Hardy is correct. So the — and there's a reason for this. It's called remedial contempt. It's not criminal contempt. And remedial contempt is to protect someone, even if the person who's engaged in contempt is mistaken. The — under the BAP decision, you don't really have much protection as a discharged debtor, because a creditor may have a reason why they think that their debt isn't discharged. And if it's based on subjectivity or on — and they can say, well, I was mistaken, but I thought it was, and there's some reason for it, the debtor has no protection. And the debtors don't have any money. And if the — if the courts are not going to allow the debtor's attorney to get paid by the creditor, which is the standard sanction, then the attorney can't afford to take it, and you've basically left the debtor's high and dry any time there's a dispute. The reality is, and what has happened in every other case but this one, is that you have a debtor who is in fact a violation of discharge injunction. If it is, it's one way prevailing party fee and damages. Well, now, is there any other way for this debtor to have sought attorney's fees after reopening his bankruptcy case other than by contempt? Is there any other way? In reality, the only jurisdiction that could grant contempt attorney's fees protection is this court, is the bankruptcy court and the Federal Courts, and they haven't — I know, but I'm asking you, do you have to use the vehicle of contempt? Yes. You have to? Yes.  And you not only sought attorney's fees as what? Part of the obligation under the contract or punishment for contempt? Well, it's the damages from contempt. It was not under the contract. Okay. So it was not pursuant to the contract. It's pursuant to a finding of contempt. Correct. And in addition to attorney's fees, you got punitive damages, right? $2,000. Well, you got a judgment in this contempt thing that you say was remedial, and normally we look upon contempt as if it's punitive. Now, this case, you label this as civil contempt as opposed to civil damages. It's opposed to so-called criminal contempt, and yet everything is done in the name of punishment, not in the name of contractual right to attorney's fees or anything else. It's all in the form of punishment, and it isn't coupled with an order that says if the defendant will do certain things, he will extricate himself from the contempt. So it's an after-the-fact punishment for contempt, is it not? Not exactly. Okay. And let me tell you why. Two things. First of all, it's to make the debtor whole. Yeah. And so you're entitled to emotional distress and attorney's fees. Now you come to the question of the $2,000 for punitive damages, which is in the area of what you're talking about, and this Court has held that because it's a civil remedial contempt, you cannot have a substantial amount of punitive damages, but you can have a minor amount of punitive damages. And this Court has held that that's true in this contempt setting. All right. And so now all we have before us is the review of whether or not a bankruptcy appellate panel was correct in saying there is this additional element to being in contempt, and that being, not only do we have the discharge, but I know it applies to me. Yes. And let's talk about applies to me, because this is a verbalization. This Court has said on several occasions that they agree with the Eleventh Circuit. The Eleventh Circuit's verbiage is a little different, but you have said in numerous occasions, without making any differentiation, that you agree with the Eleventh Circuit. Is there an order that's specific and definite? And then if there is, the burden shifts to the other, to the contemnor to show why they could not, could not obey the order. And that's the test. Then you have these two standards, and you did say, but you said in Harding, excuse me, in Renwick v. Bishop you used the same language. It has to apply. I mean, the application standard existed in Renwick v. Bennett, and you went through this analysis of why the debt was, in fact, discharged. And you did the same thing in Espinoza. So this parsing of the word apply, even in the Zilog case, when you read the opinion, you say potentially applies. Well, now, the underlying state litigation was to exclude the bankrupt from the partnership, right, or whatever. And other things. And other things. And when it was reopened after the bankruptcy, the creditor said, I don't want any of your money. I just want to pursue this other remedy. And what in an ideal world would that creditor have done? Say, okay, you got a discharge in bankruptcy, therefore you get to continue to be my partner. And I can't kick you out here for all of the things I accuse you of doing, including conversion of money. Okay? Yes. And the Court let that occur. The question is, when Mr. Taggart didn't participate at all in that and wanted nothing to do with it and didn't feel like he had any interest at all, how could they come back and ask him for attorney's fees? And the answer is they couldn't, and the Court of Appeals, Oregon Court of Appeals is so ruled, and so is Judge Dunn. And, in fact, that ruling is final, I think. Well, but he didn't ask for attorney's fees. Wasn't it clear that everybody said we're not seeking money after this reopening? Mr. Taggart never asked for attorney's fees. Nor did the other side. Yes, he did. In the State court. That's the reason for the contempt, is they then went back to the State court and said now award us attorney's fees after he filed bankruptcy, post-petition. That's the attorney's fees for which the contempt occurs, because he did nothing. Where did it happen that the — in this record, isn't there some place where the creditor said after the bankruptcy we're not seeking any money? No. The contempt in this case is after the bankruptcy occurred, and he came back, they litigated with everybody but Mr. Taggart, who didn't show and wasn't — wanted nothing to do with it, and after that litigation, they then went back to State court and said we want $40-some-thousand in attorney's fees from Mr. Taggart for litigating with the other folks after he filed bankruptcy. Okay. So that — it's the post-petition attorney's fees for which he had no interest and wanted nothing to do with it, and they forced him to be an unwilling participant in the trial or in the case, and then they asked for attorney's fees from him. Okay. That was a misunderstanding, maybe of my misunderstanding of the record. Yeah, that's the important part. Why don't you save some time for rebuttal, because they're also going to raise another issue. Okay. Thank you. May it please the court, counsel, Janet Schreyer here on behalf of the executive of the estate of Stu Brown. You're going to share some time with — I'm sharing time with co-counsel. He's going to take about five minutes. I'm going to take about 15 minutes. Okay. And I'm also here with Ray Strines, who is not going to argue. This case has gone on for a really long time. The events at issue in the underlying lawsuit took place in 2004. The lawsuit was filed in 2009. Mr. Taggart filed bankruptcy on the first day of trial in 2010. The case has bounced up and down, back and forth through the various courts for many years. Stu Brown is now deceased. The attorney who actually approached the court requesting the attorney's fees at issue in the contempt, he's been dead for four years now. His estate remains open to keep this case going. Ms. Schreyer, I don't mean to cut you short. Sure. The issue here seems to be whether the bankruptcy appellate panel was correct, and the bankruptcy, you say it was, right? That's right. And its decision turns on a reading of Zilog or Zilog. Yes. Mr. Berman says that all that case did, one, was depart from Renwick and Hyde, which has recently, after Zilog, been confirmed in Espinoza. And secondly, all Zilog said was the good faith of a creditor who thinks that it might potentially apply, that the rule might potentially apply, does not really help your people. So why don't you address that, the validity of the BAP decision? I will do that. The BAP correctly stated and applied the test. The test that is enunciated in Zilog has been applied both before and since. Let's start with the Zilog case. So Mr. Berman said the Zilog case applied a test that talked only about actual knowledge of the potential applicability of the discharge to the debt in question. Let's turn to the holding of Judge Kaczynski's opinion. And his opinion says, on remand the bankruptcy court shall determine whether the women were aware of the discharge injunction and its applicability to their claims. Not its potential applicability, but the holding of Judge Kaczynski in the Zilog case specifically states the applicability of the claim and the Zilog case test, as enunciated there, has been reiterated the same way by this Court over and over again, including in Espinoza. But the applicability in Zilog depended on whether the women in that case had received adequate notice of the discharge injunction, right? It didn't have to do with the mixed question of fact and law as to whether Mr. Taggart had, quote, returned to the fray, unquote, which was the issue which was found different ways in different courts in this case. Isn't there a substantial difference between the fact of receiving notice and the subjective measurement of whether Taggart returned to the fray? I think they're both fact-dependent inquiries that need to be examined. And in this case, the order or the discharge order, such as it were, was ambiguous because it wasn't clear whether or not the fees were discharged because that, in turn, was dependent upon the Iberra-based analysis as to whether the debtor returned to the fray. As the BAP stated, the only way that the creditors can determine whether the debtor returned to the fray is to have a court ruling on that. And so, Mr. Brown, to answer the question, Judge Levy, your confusion about whether we asked for fees or not in the trial court, we asked for fees after the trial was over, but in conjunction with that and before that at the same time, but, I mean, logically before that, we asked the trial court to determine whether Mr. Taggart had returned to the fray to make a ruling about the scope of the discharge or the applicability of the discharge to the State law fee claim in order to determine whether we could ask the court for a fee ruling. That necessarily had to happen in State court because that's the court that would determine whether there was even an entitlement to fees to, in turn, determine whether there was anything to determine was or was not within the scope of the discharge. So, Attorney Brown, because the Zilog test states that the first part of the test involves the, requires that the person knew the discharge injunction was applicable, that's the first thing Mr. Brown did. Go to court and whether, ask whether the discharge injunction was applicable to fees and when the court found it was not, then the court awarded fees. Now, Mr. Taggart went into bankruptcy court and said, well, that's contempt. You can't do that. He didn't return to the fray. Well, the bankruptcy court examined the State court decision and on its review of what the State court did, said, I agree with what the State court found on the return to the fray. And furthermore, Judge Dunn did a de novo review of the facts. And he said, even on de novo review, I find that this debtor returned to the fray. And, therefore, he found that there was no contempt. I thought the district court overruled the, or reversed the bankruptcy court and found that he did not return to the fray. Ultimately, that's correct. Ultimately, true. Ultimately, Judge Mossman found otherwise. And you'll agree that that Federal court determination has precedence over the State court determination as to whether he returned to the fray. That's correct. And that is the subject. That ruling is the subject of my colleague's cross-appeal on the return to the fray. But it doesn't matter what the actual answer to that is. The question is, did Mr. Brown and his clients know the stay was applicable to the fees when they approached the court and asked for a determination whether he did or didn't return to the fray? Well, in that case, a creditor can always raise any particular infirmity of the underlying action and say, well, I didn't know it was applicable. Well, I think that's what Zilog has a two-part test that has been, again, repeated in Espinoza. But I think Zilog could be limited to the situation where no notice had been given, not whether a debtor returned to the fray. Did he take enough action to get himself back in the case, or was he dragged in by his feet? I mean, those are two quite different issues, aren't they? No, I don't think they are. I mean, and the test is willfulness. So the test for contempt, and we're ultimately here talking about contempt. The test for contempt is willfulness. And so under the Zilog test, the willfulness analysis starts with, did the creditor know the discharge injunction was applicable? And the Zilog case even goes on to say whether that belief even could have been unreasonable. And that's necessarily a fact-based inquiry. It is not to be presumed, it says in Zilog. It is not to be imputed. It's a factual-based inquiry that in this circumstance turns upon, did the creditor come in with a good-faith belief? And how could it be other than a good-faith belief that the debtor returned to the fray if the first two judges who looked at the question agreed with him? He returned to the fray. I guess once you're back in the world of contempt, it is a willfulness standard, isn't that right? It is. As you just said. And that's what Judge Kaczynski was trying to, the point that Judge Kaczynski was trying to drive home. Right. And it's a two-part analysis. Right. The first part, whether you knew the discharge was applicable, and then the second part is more along the lines of the strict liability test. It's easier to meet that the creditor intended the actions which violated the injunction in Zilog. And we're not talking about the second part of the test. You don't get past the first part of the test. It's been a while since I've read the BAP's opinion, but didn't the BAP talk about subjective intent or subjective knowledge? It did. It did talk about subjective intent in the sense it's a fact-based inquiry in determining whether the creditor knew that the discharge injunction in turn was applicable. So let me ask you this. So, you know, the BAP's opinion is not binding authority. Is that right? A binding authority on whom? On anybody, really. I mean, you know, it's just an opinion by the BAP. They're not Article III judges. I think it's binding authority until you reverse it. No, it's not binding authority on anybody, except for the parties in this case, I guess. Right. I'm talking about the parties in this case. But it's not precedential authority. Well, they're cited all the time as authority. Yeah, but we're in a different world. The BAP does not set the law of the Ninth Circuit. We do. And the BAP relied on the law of the Circuit. Right. But what I want to get at, though, is should we adopt the BAP's approach? Absolutely, you should adopt the BAP's approach. Why? Because the BAP's approach is a fair and a practical approach in the context particularly of the facts of this case. So how does a creditor who wishes to determine whether or not a debtor returned to the fray, or whatever the equivalent of that test may be, whether any debt falls within the discharge or not, when the question is whether the debtor returned to the fray? If we adopt the BAP decision and its thinking, will we not ineluctably cause there to be a split between the Ninth Circuit and the Eleventh Circuit's decision in Hyde, which is strict liability, right? This Court in 2002, since 2002, in the Bennett case and in Zilogin and Espinoza thereafter, has adopted a different test than Hardy. It says it was looking to Hardy in the Eleventh Circuit test. But in each and every instance, this Court has cited the first part of the test involves whether the creditor knew that the discharge was applicable to the debt, whereas in the Eleventh Circuit is whether it was invoked. There is no Ninth Circuit case that has adopted the Hardy test or used the word invoked. I guess we could make it clear in anything we did that the BAP's opinion is limited to these circumstances where the party went back and sought a determination about whether or not the discharge injunction was applicable. Right. And that's a unique circumstance. These are such unique facts. In this case, it's not often that you see that. Sometimes the creditor will make its own determination. Well, I don't think this is applicable. Then just go forward. But here they went back and they sought a determination and got a determination. And can I just point out just the Espinoza. It's been suggested that Espinoza adopted a different test. And I'm just looking at the conclusion of Espinoza. The case was remanded to the Bankruptcy Court for reinstatement of the order enforcing the discharge injunction and for a determination whether the creditor acted willfully in violating the injunction under the standard we announced in Zilog, which is the test that includes the applicability, the knowledge about the applicability, as opposed to knowledge of whether the discharge was invoked. And it really is a difference between strict liability and not strict liability. And the Zilog test was adopted, or the Ibarra test was adopted, and it makes sense in this context. You're balancing two things. You're balancing the debtors' wish to be free of his debts and to have a fresh start, but on the other hand, the creditor's right not to have the bankrupt be able to go back and use what it was that he did in the litigation against the debtor with impunity. I want to address one other thing that the plaintiff's tagger has asserted in this case, which is that the State court had no jurisdiction, subject matter jurisdiction to decide the question about whether the State law, whether the discharge included the State law fees. And that adds, he says, to the contempt charge. And I turn to you to his, that's first of all not the case. That's not the case, the law of this circuit. But his own brief on reply acknowledges that the State court had subject matter jurisdiction to hear that issue. And on page 9, for instance, if the debt had not been discharged, then the State law has subject matter jurisdiction. Well, that's exactly what the court found. And the fact that later other things reversed that up the line doesn't mean he didn't have jurisdiction at that time. But perhaps even more telling is what the debtor or the debtor told the trial court at that time. So he's now claiming the second whole part of his brief says that the trial court had no subject matter jurisdiction. Attorney Brown and your clients were bad for even asking the State court to make a ruling. But yet, Mr. Berman told the State court on excerpt of record 751, my obligation is to be candid with the court. You can decide it now that there's no right to fees under the bankruptcy code or you can defer and wait to hear what the bankruptcy judge says. He'd already filed a contempt action. But he expressly told the trial court that the trial court can decide it now and that he can look at that issue. But yet he's coming to this court and saying there was no jurisdiction, he shouldn't have looked at it. He also said that in his pleading, he pointed out there was a bankruptcy ruling and a bankruptcy matter pending, but he said the court can still hear this. Okay. Let's hear from your co-counsel on the appeal from the district court. Thank you. I would ask you to affirm what the bankruptcy court did. May it please the court and counsel, I'm Hollis McMillan here representing Mr. Jahnke and Sherwood Park Business Center. I'm here to address the cross appeal that's part of this process, asking you to take a look at the decision of Judge Mossman, the district court judge who reversed in 2012 the decision of Judge Dunn to the effect that Mr. Taggart, in fact, voluntarily returned to the fray. I think the first question that needs to be addressed here is whether or not the opinion of this court last year in Castellino-Villas applies here. I submit to the court it does not. There are several reasons that I would point to the court why Castellino-Villas does not impact this appeal. Castellino-Villas was a very specific case involving a Chapter 11 debtor, and in that case, the creditor and the debtor came to an agreement as part of a reorganization plan that litigation that had begun before the bankruptcy filing would be determined as part of the reorganization plan. There was no discharge of the debtor in Castellino-Villas. That's a very significant difference from what we have here. Here we have a Chapter 7 debtor who obtained a discharge. The thing that complicates the issue is in obtaining the discharge, the debtor, Mr. Taggart, was awarded as part of the discharge the counterclaim that he had filed in the state court action, and so he still had an affirmative claim that was active in the state court litigation. So the issue that's posed here is whether or not, in fairness, Mr. Taggart can be allowed to use the bankruptcy process to strip my client's ability to recover any monetary damages or its attorney fees pursuing an action against Mr. Taggart, and yet at the same time, allow Mr. Taggart to come back into the litigation with his right to recover attorney fees if he wins. In effect, what he's done is he's used the Chapter 7 process as both a sword and a shield, if he's allowed to do that. But he only goes back to the state court to defend himself, right? Well, by defending himself, he is affirmatively working toward the claim for attorney fees. Well, but what should he do, surrender? He had a legitimate right initially to defend himself. Certainly. From these claims that he should be ousted. Certainly. Now, totally aside from the merits, he gets to defend that. Then he goes bankrupt. He goes back in to the state court only to defend himself. He doesn't ask for any new remedy, does he? Unless he wins, he might ask for attorney fees. But until then, he's not asking the state court to do anything except leave him alone. Well, he can be left alone by simply abandoning the case. And he tried to have the claims against him dismissed while at the same time keeping his claim to attorney fees. Well. After the bankruptcy, the day before the trial was to commence for the second time. Yeah. Mr. Berman submitted a motion to dismiss the claims. All right. Yes. I have another problem with this. You filed a cross appeal from the bankruptcy appellate panel, and you ask us to reverse the district court. The district court's decision that was adjudicated in another appeal as an interim decision. And I don't know how we get to reverse the district court on an appeal from the BAP, except in so far as maybe the district court ruling becomes part of the law of the case for the purpose of what the BAP is doing. And theoretically, maybe, since it's no more than law of the case, it could be reversed or overruled or ignored by BAP. I don't know. But I think this poses all kinds of problems of procedure in how we try to articulate any affirming or reversing of the district court when it has to come to us through the BAP. Well, Your Honor, that's something that puzzled me as well. My first involvement in this case was in 2012 when the case was then pending before the Ninth Circuit, challenging the district court's ruling. And as you know and have just stated, when it was presented at oral argument, the court determined, unfortunately, it lacked jurisdiction because the district court's order was not a final order. So having done that, Judge Mossman's opinion escapes review the first time. The second time, with the interim appeal through the Bankruptcy Appellate Panel, the Bankruptcy Appellate Panel, of course, does not have the power or the authority to examine what Judge Mossman did. And so in my notice of cross-appeal that was filed, not notice of cross-appeal, in the notice of appeal that was filed from the Bankruptcy Court's finding of contempt and damages, we specifically raised the issue of Judge Mossman's opinion. But because it had to sort of go through the Bankruptcy Appellate Panel the first time, but it couldn't review it, that's the only way I can see it would get to this court. Co-counsel filed a direct or they filed a separate notice of appeal that did not raise the BAP's opinion. But I could not find any authority on this question. Procedural question. What is our scope of review in reviewing Judge Mossman's opinion that Mr. Taggart did not return to the fray? I think it's clearly a de novo review, Your Honor. He made factual findings. How could it be de novo? I'm sorry? He made factual findings. How could it be de novo? Well, it's de novo review because what's presented to him is a mixed question of law and fact. The question of whether or not Mr. Taggart had voluntarily returned to the fray. And my understanding of the review under those circumstances where you have de novo review, you can ignore what findings were made by the district court and completely reanalyze this issue as it was initially presented to the bankruptcy court. Where you have a mixed question of law and fact, I believe the law in the Ninth Circuit is pretty clear that if the questions of fact prevail, then the standard for the findings of fact is clear error. And for situations where the questions of law prevail, then it's de novo. Let me put it this way. In order for us to reach the issue of whether or not the district court, Judge Mossman, was correct, we would have to decide whether or not the bankruptcy appellate panel was correct or wrong in following it. Wouldn't we? I don't think so, Your Honor. And the reason I don't think so is because after Judge Mossman's opinion sent the whole case back down to the bankruptcy court, then the bankruptcy court made its own findings and entered its order of contempt following what Judge Dunn did. And the only way to get to the question of whether Judge Mossman was correct is for you to look directly at the question at Judge Mossman's ruling and not to look through, am I getting to your question? Yeah. I hear you. I hear you. But it's a struggle. I think Judge Levy has raised an interesting question. I was thinking in terms of timeliness. Well, all I can say is if the Court had followed what I begged them to do a few years ago, we wouldn't be facing this question. As far as I'm concerned, it's taken so many twists and turns that it's difficult even conceptually to follow the thing. Now, if I get the picture correctly, the state court decided, that is the trial court decided, that he had returned to the fray. Correct. The bankruptcy court decides the same thing. Then the district court says, no, he didn't. And in the meantime, the case in the state court is on appeal, and the appellate court says, well, we defer to the district court. And they reversed, then, the trial court. And so now we wound up with, I guess, an even number of courts ruling one way and an even number ruling the other way on the same issue. Yes, and what's particularly interesting, Your Honor, and I think you'll probably appreciate this given your background, is that those courts that actually had the opportunity to see Mr. Taggart and Mr. Berman and to evaluate their conduct and their arguments in person found that there had been a voluntary return to the fray. And you will see in the bankruptcy court's opinion right at the very beginning of the opinion, Judge Dunn says, unfortunately, the proceedings in this court culminating in hearing represent no more than one pitched battle in the longstanding disputes among the parties and their counsel. It is neither the beginning nor, I fear, the end. I will refer to the underlying grievances among them only as necessary to set the stage. And I've given you plenty of time. Do you have any other questions? I have a question. The phrase return to the fray is somewhat literary. What actions do you claim Taggart took in returning to the fray? Well, there are a number of actions that he took that are set forth both in Judge Dunn's opinion and to a more limited degree in Judge Mossman's opinion. They include contesting being deposed for a second time, contesting the form of the judgment. He filed a notice of appeal and prosecuted an appeal on the merits in the Oregon court of... And he won. No, he lost on the merits. The Oregon state, the Oregon court of appeal found that he had not returned to the fray, correct? Yes, but there was that's a separate issue. What I'm talking about, Your Honor, is in returning to the fray, he was contesting whether or not he should be expelled from the LLC and whether or not the transfer to BT was legal. He appealed the merits of that judgment against him. That's definitely a return to the fray. And the Oregon court of appeals looked at that situation and they said, no, Mr. Taggart, you lose. That's, I can't imagine a more active returning to the fray than to appeal the merits of a judgment against you. Then when we were trying to... Well, if it's not returning to the fray, Your Honor, I don't know what you would determine. He's fighting the judgment that's been entered against him. But at any rate, I guess we see that issue differently. All right. I believe you have a few minutes left, about three minutes. Let me see if I can help straighten this out. Here's the way it should have happened, if it may please the Court. What they should have done is never go to the State court because under the discharge injunction, you cannot go to the State court and make a claim that is in fact barred. That is contempt. You can't do it. The State court does not have the capacity. You can't do it. It's contempt. And in fact, the law is, and it's statutory, if you go to the State court and you even get the State court to enter the judgment and it's wrong, it's void. And you can always go back to the bankruptcy court and have it declared void. But you can't make a debtor go to State court and litigate a claim that has in fact been discharged. They wanted to expel him from the partnership, as Judge Levy initially said. I'm talking about the — No. They wanted to expel him from the partnership. And after the discharge, he was still part of the partnership. I agree. Correct? How were they going to get rid of him if they couldn't go back to the district court? Could they have gone to the bankruptcy court and asked the bankruptcy to expel him from the partnership? Maybe I wasn't clear. I'm talking about going back and asking for a money judgment. I'm just talking about the money judgment. We're here. Maybe he was — They went back to State court to get him out of the partnership. Yes. And he didn't participate, but they won. But that's not what we're here for, for contempt. The contempt we're talking about is later asking Mr. Taggart to pay the attorney's fees for the trial with regard to which he didn't want to be there and he wasn't there. We're talking about attorney's fees for the actual trial that occurred without Mr. Taggart and without Mr. Taggart taking a position. The attorney's fees are all the attorney's fees for the trial that he wasn't involved with. And then they came back later. And so the contempt has to do with asking him to pay the attorney's fees that they incurred litigating with other folks. Couldn't he have filed an admission in the State court saying my former partners are right and I'm not going to contest anything? Well, essentially he said I have no interest, I don't care because — But he didn't concede. He didn't say the allegations of the complaint are correct. Well, here's the problem. He had — he transferred his interest to an LLC and the LLC's interest had been transferred to a third party. So it really — he had no stay in it and he just said it doesn't involve me. He thought he had no interest. But if they wanted to litigate it, they had to also determine the rest of it. They should have sued you as the transferee for the LLC. They did. I lost $200,000. But that's okay. That's not what we're here about. Let me try and answer a couple of things in a very short time. Number one, they should have gone to the bankruptcy court to ask the bankruptcy court to decide it. The State court can't decide it with regard to whether he returned to the fray. It's contempt to go to the State court. That's what the discharge is all about, number one. Number two, this Court has never said that it has any standard different than the Eleventh Circuit. It has never said that. Number three, and I'll read to you from your own language in Zilog at page 1009. There remains the question of whether the women and their counsel were, in fact, unaware of the discharge injunction and its potential applicability to their claims. It's the potential applicability that this Court said is relevant in Zilog. There's nothing in any decision in this Court that suggests any subjectivity or any good faith, bad faith, believe, don't believe, has anything to do with it. Remedial contempt says if you do it, knowing of the order, you owe to make somebody whole. And the State court jurisdiction, if you raise the discharge, and it's an affirmative defense in Oregon law, if you sue somebody in State court and they say I've been discharged in bankruptcy, it's an affirmative defense also. But it doesn't mean just because it's an affirmative defense it isn't contempt to try if you're wrong. And the — I think you've clarified the issues. Pardon? You've clarified the issues. I hope so. And I would also point out it's over $100,000 in legal fees. And if somebody can avoid it, how is your discharge injunction ever going to be enforced? Thank you. Okay. Thank you. Thank you, Mr. Rubin. Thank you, counsel. The matter is submitted.
judges: Leavy, Paez, Bea